IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:19-CR-68-WKW |
| | ) | [WO] |
| MARIE ANTOINETTE BOZEMAN | ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

In November 2019, Defendant Marie Antoinette Bozeman was convicted based on her guilty plea to one count of committing wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. As a result of her conviction, Defendant was sentenced to 77 months' imprisonment and 3 years' supervised released and was ordered to pay $12,891.78 in restitution. (Doc. # 50.) Defendant's projected release date is August 28, 2025. *See* Find an Inmate, Federal Bureau of Prisons. https://www.bop.gov/inmateloc/ (last visited Oct. 18, 2021).

Before the court is Defendant's *pro se* motion for compassionate release. (Doc. # 57.) The Government filed a response in opposition. (Doc. # 66.) For the reasons to follow, the motion for compassionate release is due to be denied.

**II. DISCUSSION**

"[C]ourts are generally forbidden from altering a sentence once it becomes final." *United States v. Bryant*, 996 F.3d 1243, 1251 (11th Cir. 2021), *petition for*

*cert. filed*, No. 20-1732 (U.S. June 15, 2021).  Section 3582(c)(1)(A)(i), as amended by the First Step Act, offers courts a narrow reprieve to reduce a sentence for "extraordinary and compelling reasons."  It provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court . . . upon motion of the defendant . . . may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A)(i) (citing 18 U.S.C. § 3553(a)).

In *Bryant*, the Eleventh Circuit held that § 1B1.13 "is an applicable policy statement that governs all motions under Section 3582(c)(1)(A)," including those filed by inmates, and thus "district courts may not reduce a sentence under Section 3582(c)(1)(A) unless a reduction would be consistent with 1B1.13."  996 F.3d at 1262 (citing U.S.S.G. § 1B1.13).  Section 1B1.13 delineates four categories that constitute "extraordinary and compelling reasons" for compassionate release:  (A) a defendant's medical condition, which includes, among other conditions, a "serious physical or medical condition"; (B) a defendant's age; (C) a defendant's family circumstances; and (D) "other reasons . . . [a]s determined by the Director of the Bureau of Prisons."  § 1B1.13, cmt. n.1(A)–(D).  Importantly, as pronounced in *Bryant*, application note 1(D), which is the catch-all provision, "does not grant discretion to courts to develop 'other reasons' that might justify a reduction in a

defendant's sentence."  *Bryant*, 996 F.3d at 1248; *see also id.* at 1262–65.  That discretion lies only with the Bureau of Prisons.  Hence, application notes 1(A), (B), and (C) to § 1B1.13 constrain district courts in determining whether a defendant has established extraordinary and compelling reasons justifying compassionate release.

In *United States v. Tinker*, the Eleventh Circuit succinctly summarized what § 3582(c)(1)(A) requires:

> [B]y dint of § 3582(c)(1)(A)'s plain text, a district court may reduce a term of imprisonment if (1) the § 3553(a) sentencing factors favor doing so, (2) there are "extraordinary and compelling reasons" for doing so, and, as relevant here, (3) doing so wouldn't endanger any person or the community within the meaning of § 1B1.13's policy statement.

No. 20-14474, 2021 WL 4434621, at *2 (11th Cir. Sept. 28, 2021).  *Tinker* held that district courts can examine these three conditions in any order it chooses.  *Id.*  If even one of § 3582(c)(1)(A)'s conditions is rejected, then a defendant is not entitled to a sentence reduction.  *Id.*  The defendant bears the "burden to establish that he qualifie[s] for compassionate release."  *United States v. Smith*, 856 F. App'x 804, 806 (11th Cir. 2021) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013)).

Defendant argues that her medical conditions—type 2 diabetes and obesity—demonstrate her susceptibility to severe illness if she contracts COVID-19 and are extraordinary and compelling reasons for compassionate release.  The Centers for Disease Control and Prevention ("CDC") has determined that these two conditions

"can make [a person] more likely to get severely ill from COVID-19." *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 18, 2021).  Under § 1B1.13, a serious medical condition can qualify as an extraordinary and compelling reason for compassionate release, *see* § 1B1.13 cmt. n.1(A)(ii)(I), but only where that condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" and is one "from which [the inmate] is not expected to recover," § 1B1.13 cmt. n.1(A).  Here, it need not be decided whether Defendant's medical conditions rise to this level of decline.[1]

---

[1] Defendant understandably is concerned about the risks COVID-19 pose to her. Fortunately, since the filing of her motion, there have been two noteworthy developments. First, according to the BOP's website, as of October 15, 2021, the facility where Defendant is incarcerated—Federal Correctional Institution Aliceville ("FCI Aliceville")—has no active COVID-19 cases among its inmates and five active cases among its staff. *See* BOP Covid-19 Cases, available at https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 18, 2021). This is a marked improvement. *See id.* Second, the BOP has administered 233,200 doses of the COVID-19 vaccine to its approximate 36,000 staff and to its inmates, which as of October 14, 2021's count was 156,675. *See* BOP Covid-19 Vaccine Implementation, available at https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 18, 2021); BOP Statistics, https://www.bop.gov/ about/statistics/population_statistics.jsp (providing that inmate statistics are updated each Thursday) (last visited Oct. 18, 2021).

While there is no evidence as to whether Defendant has received a COVID-19 vaccine, it appears to be readily available at FCI Aliceville. The BOP's website indicates that, since the COVID-19 vaccine was introduced, 137 staff members and 1,144 inmates have received both doses of the vaccine at FCI Aliceville and, thus, have been fully inoculated. *See* BOP COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 18, 2021). As of today's date, the BOP reports that there are 1,117 inmates at FCI Aliceville; the ebb and flow of inmates account for the discrepancy between the number of inmates vaccinated while housed at FCI Aliceville and the total inmate population at FCI Aliceville as of today's date. *See* BOP FCI Aliceville, https://www.bop.gov/locations/institutions/ali/ (last visited Oct. 18, 2021). It

4

Even if Defendant has demonstrated an extraordinary and compelling reason justifying compassionate release, the § 3553(a) factors, considered in light of Defendant's "current circumstances" and her "circumstances at the time of h[er] original sentencing," do not warrant early release. *United States v. Groover*, 844 F. App'x 185, 188 (11th Cir. 2021); *see also United States v. Rind*, 837 F. App'x 740, 744 (11th Cir. 2020) (observing that, under § 3553(a), the defendant's "medical conditions . . . are part of his history and characteristics"). These factors include the nature and circumstances of Defendant's offense, her history and characteristics, and the need "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." § 3553(a)(1), (a)(2)(A)–(C).

As to her offense, Defendant engaged in an illegal scheme in which she falsely represented to individuals that she was as an employee or affiliate of Alabama Power Company and could reduce the amount owed on their power bills. She collected partial payments in cash from these individuals and represented that she would pay the entire bill for them. Instead of using the money to pay the bills, she pocketed the cash. Then, using the power company's pay-by-telephone system, she randomly

---

is clear from these statistics that the vaccination rate at FCI Aliceville exceeds that of the general population in the state of Alabama.

modified the last four numbers of her Bank of America credit card until the system accepted the credit card number and generated a receipt for payment. She would send the receipt to the scammed customers and would continue to use that fraudulently obtained credit card information to pay customer bills until it was rejected by the system. She engaged in this scheme for nearly a year, collecting an estimated $156,000 in cash for herself. (Presentence Investigation Report ("PSR") ¶¶ 5–14.) Defendant's conviction is a serious financial crime that victimized more than 650 individuals. (PSR ¶ 25.)

Additionally, this is not Defendant's first conviction for fraud-related activities. Defendant has a lengthy criminal history that landed her in criminal history category IV. (PSR ¶ 48.) That history demonstrates multiple felony convictions for negotiating bad checks, for stealing others' identities to obtain credit and debit cards, for thieving bank funds, and for cashing forged checks. (PSR ¶¶ 38–45.) As the sentencing court summarized, financial fraud is "something that Ms. Bozeman has done repeatedly, and she has repeatedly been punished for doing so—in fact, having spent time in custody—and yet has not changed her behavior." (Doc. # 53, at 27.) Defendant is a repeat offender who has served less than a third of her seventy-seven-month sentence. In sum, the nature and circumstances of Defendant's offense and her history and characteristics do not favor early release. *See* § 3553(a)(1).

Furthermore, release at this early juncture would undercut the gravity of Defendant's offense, diminish public respect for the law, negate the deterrent value of punishment, and fail to protect the public from additional crimes of Defendant. *See* § 3553(a)(2). Based upon a thorough review of the record, the balancing of the § 3553(a) factors does not justify Defendant's compassionate release.

### III. CONCLUSION

Based on the foregoing, it is ORDERED that Defendant's *pro se* motion for compassionate release (Doc. # 57) is DENIED.

DONE this 18th day of October, 2021.

                                        /s/ W. Keith Watkins
                                UNITED STATES DISTRICT JUDGE